**Spencer Tracy HOLLOWAY, Petitioner,**

v.

**Kurt JONES, Respondent,**

**No. CIV. 00–73864–DT.**

United States District Court, E.D. Michigan, Southern Division.

Sept. 28, 2001.

Sheldon Halpern, Royal Oak, MI, for petitioner.

Brad H. Beaver, Michigan Department of Attorney General, Habeas Corpus Division, Lansing, MI, Vincent J. Leone, Lansin, MI, for respondent.

### OPINION AND ORDER OF SUMMARY DISMISSAL[1]

TARNOW, District Judge.

Spencer Tracy Holloway, ("petitioner"), presently confined, seeks the issuance of a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In his application petitioner challenges his conviction on one count of first degree murder, M.C.L.A. 750.316; M.S.A 28.548, and one count of possession of a firearm in the commission of a felony. M.C.L.A. 750.227b; M.S.A. 28.424(2). Respondent has filed a motion for summary judgment, contending that the petition was not timely filed in accordance with the

statute of limitations contained in 28 U.S.C. § 2244(d)(1). Petitioner has filed two responses to the motion for summary judgment. For the reasons stated below, petitioner's application for a writ of habeas corpus is dismissed.

### I. Background

Petitioner was convicted of the above offenses following a jury trial in 1986. Petitioner's direct appeals ended when the Michigan Supreme Court denied his application for leave to appeal following his appeal of right on June 27, 1989. *People v. Holloway*, 432 Mich. 917 (1989). On February 24, 1997, petitioner, through his current attorney, filed a post-conviction motion for relief from judgment pursuant to M.C.R. 6.500, *et seq.* After the trial court denied his motion for relief from judgment, the Michigan Court of Appeals denied leave to appeal. *People v. Holloway*, (No. 213526, December 30, 1998). The Michigan Supreme Court denied leave to appeal on August 31, 1999. *People v. Holloway*, 461 Mich. 858, 601 N.W.2d 389 (1999). The instant petition was filed with this Court on August 30, 2000.[2]

### II. Discussion

■ The petition for writ of habeas corpus must be dismissed because it has not been filed within the one year statute of limitations. Under the Antiterrorism and Effective Death Penalty Act (AEDPA), a one (1) year statute of limitations shall apply to an application for writ of habeas corpus by a person in custody pursuant to a judgment of a state court. The one year statute of limitation shall run from the latest of:

(A) the date on which the judgment became final by the conclusion of direct

---

1. Staff Attorney Daniel Besser provided quality research assistance.

2. Counsel presumably informed Mr. Holloway of the statute of limitations prior to resuming his representation of Mr. Holloway.

review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

█ A federal court will dismiss a case where a petitioner for a writ of habeas corpus does not comply with the one year statute of limitations. *Thomas v. Straub*, 10 F.Supp.2d 834, 835 (E.D.Mich.1998).

In the present case, petitioner's direct appeal of his conviction ended when the Michigan Supreme Court denied leave to appeal on June 27, 1989. Petitioner's conviction would become final, for the purposes of the AEDPA's limitations period, on the date that the 90 day time period for seeking certiorari with the U.S. Supreme Court expired. *See Bronaugh v. Ohio*, 235 F.3d 280, 283 (6th Cir.2000). Petitioner's judgment therefore became final on September 27, 1989, when he failed to file a petition for writ of certiorari with the U.S. Supreme Court. *Thomas v. Straub*, 10 F.Supp.2d at 835. Because petitioner's conviction became final prior to the April 24, 1996 enactment date of the AEDPA, petitioner had one year from April 24, 1996 to timely file a petition for habeas relief with the federal court. *Porter v. Smith*, 126 F.Supp.2d 1073, 1074–1075 (E.D.Mich. 2001). Absent state collateral review, petitioner would have been required to file his petition for writ of habeas corpus with this Court no later than April 24, 1997 in order for the petition to be timely filed. *Id.* at 1075.

█ Petitioner filed a state post-conviction motion for relief from judgment on February 24, 1997, after three hundred and six (306) days had elapsed. 28 U.S.C. § 2244(d)(2) expressly provides that the time during which a properly filed application for state post-conviction relief or other collateral review is pending shall not be counted towards the period of limitations contained in the statute. *Matthews v. Abramajtys*, 39 F.Supp.2d 871, 874 (E.D.Mich.1999). This tolling provision is applicable to state prisoners, whose one year limitations period for seeking federal habeas relief began to run on the AEDPA's enactment date. *Lucas v. Carter*, 46 F.Supp.2d 709, 711 (N.D.Ohio 1999). The tolling of the one year statute of limitations did not end until at the latest ninety days after the Michigan Supreme Court completed collateral review by denying the petitioner's application for leave to appeal on August 31, 1999. *Cf., Hudson v. Jones*, 35 F.Supp.2d 986, 988–989 (E.D.Mich.1999) that would be November 29, 1999. However, petitioner's motion for relief from judgment did not cause the one year limitations period to begin to run anew after the post-conviction motion was denied. *See Searcy v. Carter*, 246 F.3d 515, 519 (6th Cir.2001). Thus, petitioner had, at most, fifty nine days remaining to timely file his petition for writ of corpus with this Court, meaning that he had until January 27, 2000 to file his petition in compliance with the AEDPA's one year limitations period. The petition was not filed with this Court until August 30, 2000. Thus, the petition was untimely.

█ Petitioner acknowledges that his petition was not filed within the AEDPA's one year limitations period. However, pe-

titioner argues that the limitations period should be equitably tolled for two reasons. First, petitioner claims that he is actually innocent. Second, petitioner argues that the limitations period should be tolled because his financial resources precluded him from retaining counsel in a timely fashion to file his habeas petition.[3]

■ The one year limitations period under the AEDPA is considered a statute of limitations which is subject to equitable tolling. *Dunlap v. United States*, 250 F.3d 1001, 1004 (6th Cir.2001).

■ The Sixth Circuit also noted that the doctrine of equitable tolling should be used "sparingly." *Dunlap*, 250 F.3d at 1008–1009. Absent a satisfactory explanation by a petitioner for failing to timely file a habeas petition, a petitioner would fail to exercise due diligence in pursuing his or her claim, and thus would not be entitled to equitable tolling of the limitations period. *Id.* at p. 1010.

■ The Court will address petitioner's second argument in support of equitable tolling first. Petitioner argues that because of his indigency, he was unable to timely retain an attorney to file a habeas petition on his behalf. Claims that a petitioner did not have professional legal assistance are not an extraordinary circumstance which would toll the statute of limitations. *Henderson v. Johnson*, 1 F.Supp.2d 650, 656 (N.D.Tex.1998); *See also Bilodeau v. Angelone*, 39 F.Supp.2d 652, 659 & n. 1 (E.D.Va.1999)(petitioner's claim that the delay in filing the petition resulted, because he was seeking legal assistance would neither establish excusable neglect, so as to warrant an enlargement of time to file the petition, or support the equitable tolling of the statute of limitations). Thus, the fact that petitioner was unable to retain counsel in a timely fashion to file his habeas petition is not a circumstance that would justify the equitable tolling of the statute of limitations.

■ The primary argument offered by petitioner to support the equitable tolling of the statute of limitations is his claim that he is actually innocent of these crimes. Petitioner's argument "raises concerns because of the inherent injustice that results from the conviction of an innocent person, and the technological advances that can provide compelling evidence of a person's innocence." *Wyzykowski v. Department of Corrections*, 226 F.3d 1213, 1218 (11th Cir.2000). This Court is also mindful of the fact that: "[D]ismissal of a first federal habeas petition is a particularly serious matter, for that dismissal denies the petitioner the protections of the Great Writ entirely, risking injury to an important interest in human liberty." *Lonchar v. Thomas*, 517 U.S. 314, 324, 116 S.Ct. 1293, 134 L.Ed.2d 440 (1996).

Some circuit courts have indicated that equitable tolling of the limitations period would be appropriate when a petitioner was actually innocent. *See Gibson v. Klinger*, 232 F.3d 799, 808 (10th Cir.2000). Other circuit courts have ruled that a claim of actual innocence would not constitute a "rare and exceptional" circumstance which would justify the equitable tolling of the limitations period, given that most prisoners maintain that they are innocent. *Felder v. Johnson*, 204 F.3d 168, 171 (5th Cir.2000). The Sixth Circuit has appeared to suggest in the *dicta* of one of their

---

**3.** There is no requirement that a petition must be filed by counsel. Since, he had counsel through the state court collateral proceedings, that counsel had an obligation to inform him of the statute of limitations. Petitioner could have filed the petition in *pro per* using the forms provided by the district court and attaching the memoranda of law in support of the applications for leave to appeal to the Michigan Supreme Court.

recent decisions that, if a prisoner purposefully or by inadvertence let the time run under which he could have filed his habeas petition, he cannot file a petition beyond the statutory time, even if he claims actual innocence. *See Workman v. Bell,* 227 F.3d 331, 342 (6th Cir.2000); *cert. den.* —— U.S. ——, 121 S.Ct. 1194, 149 L.Ed.2d 109 (2001)(Per Opinion of Siler, J., joined by six judges, voting to deny petition for rehearing en banc).

Several district courts have addressed the issue of actual innocence as a ground to excuse the late filing of a habeas petition or motion to vacate sentence brought under 28 U.S.C. § 2255. One judge has noted that if there is a "core function" of habeas corpus, "it would be to free the innocent person unconstitutionally incarcerated." *Alexander v. Keane,* 991 F.Supp. 329, 338 (S.D.N.Y.1998). Another district court judge has noted that the U.S. Constitution may require that when a claim of actual innocence is involved, habeas review should remain open until a habeas petitioner has had at least one "meaningful opportunity for review." *United States v. Zuno–Arce,* 25 F.Supp.2d 1087, 1100 (C.D.Cal.1998); *aff'd* 245 F.3d 1108 (9th Cir.2001). The court reasoned that to foreclose habeas review where a claim of actual innocence was made might violate either the Eighth Amendment ban on cruel and unusual punishment or the Suspension Clause of the United States Constitution. *Id.* The court in *Zuno–Arce* went on to hold that to foreclose a claim of a constitutional violation where there has been a colorable showing of factual innocence would constitute a due process violation or an improper suspension of habeas corpus relief. *United States v. Zuno–Arce,* 25 F.Supp.2d at 1102. At least two judges in this district have suggested in unpublished opinions that there might be an "actual innocence" exception to the limitations period. *See Washington v. Elo,* 2000 WL 356353, * 7 (E.D.Mich. February 29,

2000)(A claim of probable actual innocence supported by credible evidence may provide a basis for equitable tolling of the statute of limitations); *Rockwell v. Jones,* 2000 WL 973675, * 4 (E.D.Mich. June 30, 2000)(When a petitioner has diligently pursued federal habeas relief, a credible claim of actual innocence is sufficient to toll the one year statute of limitations). A third judge in this district has indicated that assuming that actual innocence might be grounds for equitable tolling of the limitations period, prisoners must diligently pursue their claims to avail themselves of equitable tolling on this basis. *Green v. Smith,* 2000 WL 1279165, * 4 (E.D.Mich. August 15, 2000).

This Court concludes that to utilize the one year statute of limitations contained in the AEDPA to preclude a petitioner who can demonstrate that he or she is factually innocent of the crimes that he or she was convicted of would violate the Suspension Clause contained in U.S. Const. Art. I, § 9 cl. 2, as well as the Eighth Amendment's ban on cruel and unusual punishment. The Court therefore holds that an actual innocence exception exists to the statute of limitations contained within § 2244(d)(1). The Court now addresses petitioner's actual innocence claim.

The U.S. Supreme Court has indicated that "a claim of "actual innocence" is not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits." *Herrera v. Collins,* 506 U.S. 390, 404, 113 S.Ct. 853, 122 L.Ed.2d 203 (1993). The U.S. Supreme Court has indicated that "actual innocence" means factual innocence, not mere legal insufficiency. *Bousley v. United States,* 523 U.S. 614, 623, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998). The Supreme Court has also explained that "the miscarriage of justice exception [to

the procedural default rule] is concerned with actual as compared to legal innocence." *Sawyer v. Whitley,* 505 U.S. 333, 339, 112 S.Ct. 2514, 120 L.Ed.2d 269 (1992). Finally, in order for such a claim to be credible, "a claim of actual innocence must be based on reliable evidence *not presented at trial." Calderon v. Thompson,* 523 U.S. 538, 559, 118 S.Ct. 1489, 140 L.Ed.2d 728 (1998)(*quoting Schlup v. Delo,* 513 U.S. 298, 324, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995) [Emphasis added] ). Finally, actual innocence "does not merely require a showing that a reasonable doubt exists in the light of the new evidence, but rather that no reasonable juror would have found the defendant guilty." *Schlup v. Delo,* 513 U.S. at 329, 115 S.Ct. 851.

This Court also notes that those courts that have recognized a freestanding actual innocence claim have held that a habeas petitioner asserting such a claim must go beyond demonstrating doubt about his or her guilt, and must affirmatively prove that he or she is probably innocent of the crime charged. *Jackson v. Calderon,* 211 F.3d 1148, 1165 (9th Cir.2000); *cert. den. sub nom Woodford v. Jackson,* 531 U.S. 1072, 121 S.Ct. 764, 148 L.Ed.2d 665 (2001). The Fourth Circuit has also noted that claims of actual innocence made by a habeas corpus petitioner, whether presented as freestanding ones, or merely as gateways to excuse a procedural default, "should not be granted casually." *Wilson v. Greene,* 155 F.3d 396, 404 (4th Cir.1998).

Turning now to petitioner's case, this Court concludes that petitioner has failed to establish that he is actually innocent of first degree murder. Petitioner has presented no new, reliable evidence to show that he is actually innocent of these crimes. Several courts have declined to toll the limitations period contained in the AEDPA under an "actual innocence" exception, where the petitioner offered no new or reliable evidence in support of his claim. *Smith v. Stegall,* 141 F.Supp.2d 779, 784 (E.D.Mich.2001); *Thomas v. Straub,* 10 F.Supp.2d at 836. Instead, petitioner claims that the evidence at trial was insufficient to establish either that he was the person who shot and killed the victim or that he acted with the requisite premeditation or deliberation necessary for first degree murder. Although petitioner challenges the sufficiency of the evidence to convict him, this claim will not be considered by this Court in determining whether an actual innocence exception exists in petitioner's case for purposes of tolling the statute of limitations period. *See Alexander v. Keane,* 991 F.Supp. at 340 (claim of legal insufficiency of the evidence will not be considered by a federal court in determining whether a petitioner has established actual innocence sufficient to allow review of an otherwise time barred petition); *See also Anthony v. Schuppel,* 86 F.Supp.2d 531, 538 (D.Md.2000)(reiteration of petitioner's arguments concerning the sufficiency of evidence presented at trial not a basis for invoking the actual innocence exception to the procedural default doctrine).

In the present case, petitioner bases his actual innocence claim solely upon the evidence presented at trial, including his testimony that he shot the victim in self-defense. In *Cromwell v. Keane,* 33 F.Supp.2d 282, 288 (S.D.N.Y.1999), the district court rejected an actual innocence claim advanced to support the tolling of the limitations period, where petitioner's claim relied only upon the evidence presented at trial, including his own testimony.

In the present case, petitioner has offered no new or reliable evidence in support of his claim that he is factually innocent of these crimes. As the judge in *Alexander v. Keane, supra,* indicated, in light of *Schlup, supra,* "a claim without

new evidence unseen by the jury, to be successful, would put the court in the position of asserting that none of the jurors acted reasonably." *Id.* at 340. In the absence of new or reliable evidence to establish his claim of actual innocence, this Court is not in a position to assert that none of the jurors acted reasonably when they convicted petitioner of first degree murder and felony-firearm. There may be such a case, but this is not one.

Assuming this Court could make an actual innocence determination based solely upon the evidence presented at trial, petitioner has failed to make an affirmative showing that he was actually innocent of these crimes. The evidence at trial established that the victim was shot either by Portia Jones or her son while he was attempting to rob or kidnap them in front of Jones' house, which was the headquarters for an illegal drug operation. After being shot, the victim lay on the ground claiming that he could not move his legs. Jones and her son both shot at the victim again as he lay on the ground. Petitioner arrived at the house approximately twenty minutes later with two other men, Andre Williams and Charles Obey. Obey was armed with a .38 handgun and petitioner with an Uzi. Obey asked the victim who sent him to the house. One witness, Kathy Combs, testified that the victim was able to reply that a John Lang had sent him and begged the men not to kill him. Andre Williams testified that the victim asked for water and moaned. According to Williams, Obey and petitioner both kicked the victim. Obey then fired five to six shots at the victim and petitioner fired more than ten shots at him. Williams indicated that he did not see a weapon in the victim's possession as he walked past him. After the shooting, Kathy Combs accompanied petitioner and the other persons to another house in Detroit. Once at this house, petitioner loaded the Uzi in a bedroom and laughed that he had "really put them all into him." Petitioner told another witness, Nick Scott, that he "sprayed" the victim with his Uzi. Scott testified that petitioner never told him that he shot the victim in self-defense.

Petitioner testified that he went to Jones' residence with Obey and Williams on the night in question. Williams had informed him that Kathy Combs had requested help because of a burglary. As he approached the house, he noticed that the victim was bleeding. Petitioner noticed a large bulge under the victim's clothing and testified that the victim reached for the bulge. Petitioner became scared and pulled the trigger. Petitioner claimed that he pulled the trigger of the Uzi once, but that the weapon would not stop firing. Petitioner claimed that he shot the victim in self-defense, because he thought that the victim was reaching for a weapon. Petitioner denied bragging about "spraying" the victim with the Uzi.

The medical examiner concluded that the victim received twenty three bullet wounds. He was unable to state which of the gunshot wounds, individually or in combination, caused the victim's death.

Petitioner has not offered new or reliable evidence that he acted in self-defense when he shot the victim. Although new evidence of self-defense could establish actual innocence, because one who kills in self-defense is not guilty of murder, *See United States ex. rel. Hinton v. Snyder,* 128 F.Supp.2d 1165, 1171–1172 (N.D.Ill. 2001), petitioner has failed to offer new evidence that he acted in self-defense when he shot the victim. The new evidence would be required, because it is clear that the evidence presented at trial when viewed most favorably to the prosecution was sufficient. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). The victim was already lying wounded on the ground at the

time that petitioner shot him. Petitioner fired multiple shots from an automatic weapon at this victim, who was already incapacitated. None of the other witnesses observed the victim to be armed with a weapon at the time of the shooting. Several persons indicated that petitioner bragged about the shooting afterward. One of these witnesses indicated that petitioner never told him that he shot the victim in self-defense. Accordingly, petitioner has failed to make a persuasive showing that he shot the victim in self-defense.

 Petitioner's related argument that the evidence failed to establish that he killed the victim because the victim was already mortally wounded also fails to prove his actual innocence of the crime. In Michigan, the prosecution does not need to prove that the defendant's conduct was "the" proximate cause of death, but only "a" proximate cause of death. *Elliott v. Jones*, 2000 WL 156815, * 4 (E.D.Mich. January 6, 2000)(citing to *People v. Tims*, 449 Mich. 83, 95–96, 534 N.W.2d 675 (1995)). In this case, the medical examiner was unable to state which of the gunshots, either individually or in combination, caused the victim's death. Even if the victim was already mortally wounded, so long as petitioner's gunshots contributed to his death, petitioner could be liable for the murder.

Based upon the foregoing, petitioner has failed to establish that he is actually innocent for purposes of excusing his compliance with the one year limitations period. Under Rule 4 of the Rules Governing § 2254 Cases, 28 U.S.C. foll. § 2254, summary dismissal is appropriate because it appears from the face of the petition that the application for writ of habeas corpus was not filed in compliance with the one year limitations period.

### III. *Order*

Accordingly, the Court **DISMISSES WITH PREJUDICE** the petition for writ of habeas corpus pursuant to 28 U.S.C. § 2244(d)(1).