DAVID M. LAWSON, United States District Judge
Michigan prisoner Jeffrey Durk Carter was convicted in 1987 of multiple counts of sexual assault, robbery, and weapons offenses and sentenced to lengthy prison terms. His convictions became final after completion of his direct appeals in 1990. In 2004, he began several rounds of post-conviction litigation in the state courts, mainly looking to have DNA evidence tested. However, he was unsuccessful, because the evidence was destroyed according to the routine practice at the time. Carter filed a petition for a writ of habeas corpus in this Court in December 2014. The warden contends, among other things, that the petition is untimely. The Court agrees, and will dismiss the petition.
I.
The Michigan Court of Appeals summarized the relevant facts of the case in its opinion on direct review:
The charges stemmed from offenses committed in Detroit against a woman and her two male friends in the early morning hours of June 1, 1986. The threesome had returned to their vehicle in the Joe Louis Arena parking structure after a Bob-lo midnight cruise, when they were approached by a uniformed man (defendant) who identified himself as a police officer. Defendant performed a field sobriety test on the driver of the vehicle, Jim Reynolds, and also informed Reynolds that a warrant *849 was issued for his arrest due to outstanding parking tickets. Reynolds became suspicious because he did not have any outstanding tickets.
Reynolds started to walk away but defendant drew a gun. Defendant then ordered all three individuals to put their hands on the wall. Defendant stole the men's wallets and other valuables, and took the woman's purse. Defendant forced the woman into Reynolds' vehicle and drove to a remote area where he forced the woman to engage in various sexual acts. Defendant then drove to a motel where he again forced the woman to engage in sexual acts involving penetration. Afterwards, defendant drove the woman to an area near Woodward Avenue and dropped her off.
Reynolds' vehicle was recovered four days later. Items found inside the vehicle included a police-type jacket with defendant's name inscribed on it, pieces of paper and handwritten business cards with defendant's name on them, handcuffs, a starter pistol, several rounds of live ammunition for other weapons, and a police-type walkie-talkie. Defendant was arrested a short time later and transported to police headquarters. After defendant exited the police vehicle, Reynolds' wallet was found in that vehicle.
At trial, all three victims identified defendant as the perpetrator. Defendant's primary defense was the reliability of the victims' identification. Defendant, who testified on his own behalf, claimed that he was home in bed, alone, on the night in question.
People v. Carter , No. 99440, *1-2 (Mich. Ct. App. Aug. 14, 1989).
Carter filed a direct appeal in the Michigan Court of Appeals raising claims concerning the jury instructions, the admission of certain expert testimony, the prosecutor's reference to his post-arrest assertion of his rights to silence and counsel, improper rebuttal testimony, the admission of other acts testimony, the prosecutor's closing argument, the prosecutor's comments on his testimony, the sufficiency of the evidence, trial counsel's failure to seek suppression of the victims' pretrial identifications, and the validity of his sentence. The court affirmed his convictions and sentences, id. at *2-12, and the Michigan Supreme Court denied leave to appeal, People v. Carter , No. 87341 (Mich. S.Ct. May 30, 1990).
In 2004, Carter filed the first in a series of post-conviction motions, beginning with a motion to produce DNA evidence in the state trial court. The trial court conducted a hearing, found that the potential evidence was destroyed before the enactment of a 2001 law requiring biological evidence to be retained for the period of a convict's incarceration, ruled that there was no bad faith by the prosecution, and dismissed the motion. See People v. Carter , No. 86-04185, Hrg. Tr. at 9 (Wayne Co. Cir. Ct. Nov. 10, 2004). The court stated that the dismissal was without prejudice to the petitioner filing a motion for new trial. Id. at 9-10.
In 2006, Carter filed a motion for new trial in the state trial court raising claims concerning the effectiveness of trial counsel, the legality of his arrest, and the legality of the search and seizure of evidence. The trial court denied the motion, holding that Carter did not demonstrate good cause and prejudice under Michigan Court Rule 6.508(D)(3). People v. Carter , Nos. 86-04185, 86-04186 (Wayne Co. Cir. Ct. April 24, 2007). The court of appeals denied Carter's ensuing delayed application for leave to appeal because he "failed to meet the burden of establishing entitlement to relief under MCR 6.508(D)." People v. Carter , No. 281571 (Mich. Ct. App. Feb. 15, 2008). The supreme court denied *850 leave to appeal on July 29, 2008. People v. Carter , 482 Mich. 894, 753 N.W.2d 206 (2008).
In 2009, Carter filed a motion to introduce DNA evidence and for an evidentiary hearing in the state trial court to explore allegations of ineffective assistance of counsel. The court construed it as a motion for relief from judgment. Carter raised claims concerning DNA evidence from the crime scene, the effectiveness of trial counsel in several respects, the legality of his arrest, and the validity of the search and seizure of evidence. The trial court denied the motion, finding that because the claims lacked merit, Carter failed to establish prejudice under Michigan Court Rule 6.508(D)(3). People v. Carter , No. 86-04185 (Wayne Co. Cir. Ct. Jan. 8, 2010). The record does not show that Carter appealed that decision.
In 2010, Carter filed a motion for discovery in the state trial court seeking records, which was denied because the state trial record was given to appellate counsel during direct appeal. People v. Carter , No. 86-4185 (Wayne Co. Cir. Ct. July 12, 2010).
In 2011, Carter filed another motion for a new trial in the trial court under Michigan Court Rule 6.431, and a motion under Michigan Compiled Laws § 770.16 for DNA testing of blood and semen found on the victim's panties. The court denied the request for DNA testing because the evidence was no longer available for testing and was destroyed between 1986 and 2001 before the law required its preservation. The court denied the motion for new trial because it was untimely under state law. People v. Carter , Nos. 86-04185, 86-04186 (Wayne Co. Cir. Ct. June 23, 2011).
In 2013, Carter filed a motion for investigation by a state court administrator under Michigan Court Rule 8.113, which was denied. People v. Carter , No. 86-04185 (Wayne Co. Cir. Ct. December 18, 2013). Also in 2013, he filed a complaint for superintending control in the Michigan Court of Appeals, which was denied. In re Carter , No. 318809 (Mich. Ct. App. Jan. 23, 2014). He did not appeal that decision.
On December 15, 2014, Carter signed and dated the present federal habeas petition; it was deem filed on that date. Ingram v. Barrett , No. 15-11074, 2015 WL 1966470, at *1 (E.D. Mich. Apr. 29, 2015) ("Under the 'prison mailbox rule,' papers mailed to the Clerk by a prisoner are deemed to be filed on the day they are dated and signed even if received and docketed on a later date.") (citing Williams v. Birkett , 670 F.3d 729, 732 n.1 (6th Cir. 2012) ; Hudson v. Martin , 68 F.Supp.2d 798, 800 n.2 (E.D. Mich. 1999) ). The Warden says, among other things, that the filing was too late.
II.
The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") became effective on April 24, 1996 and governs the filing date for this action because the petitioner filed his petition after the AEDPA's effective date. See Lindh v. Murphy , 521 U.S. 320, 336, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997). The AEDPA amended 28 U.S.C. § 2244 to include a one-year period of limitations for habeas petitions brought by prisoners challenging state court judgments. Vroman v. Brigano , 346 F.3d 598, 601 (6th Cir. 2003). The one-year statute of limitations runs from the latest of:
(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
*851 (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
28 U.S.C. § 2244(d)(1). A habeas petition filed outside the prescribed time period must be dismissed. See Isham v. Randle , 226 F.3d 691, 694-95 (6th Cir. 2000) (case filed 13 days after limitations period expired dismissed for failure to comply); Wilson v. Birkett , 192 F.Supp.2d 763, 765 (E.D. Mich. 2002).
Carter argues that a few of the limitations period triggers apply here. The Court will discuss each of them in turn.
A. Finality of the Conviction
Carter's convictions became final in 1990 when his direct appeal came to an end. Because that occurred before the AEDPA was enacted, he was entitled to a one-year grace period, beginning on April 24, 1996, to file his habeas petition or a motion for post-conviction relief that would toll the limitations period. Stokes v. Williams , 475 F.3d 732, 734 (6th Cir. 2007). That period expired on April 24, 1997.
None of Carter's post-conviction motions served to toll the federal statute of limitations, because he did not file any of them during the grace period. His first motion for new trial in the state trial court was not filed until 2004 (and he did not file his subsequent post-judgment state court motions until 2006, 2009, 2010, 2011, and 2013), well after the grace period lapsed. A state court post-conviction motion that is filed after the limitations period expires cannot toll that period because there is no period remaining to be tolled. Hargrove v. Brigano , 300 F.3d 717, 718 n.1 (6th Cir. 2002). The AEDPA's limitations period does not begin to run anew after the completion of state post-conviction proceedings. Searcy v. Carter , 246 F.3d 515, 519 (6th Cir. 2001). Carter's petition is untimely when measured by 28 U.S.C. § 2244(d)(1)(A).
B. State-created Impediment
Carter does not contend that his claims arise from newly-created rights recognized by the United States Supreme Court and made retroactive to cases on collateral review. See 28 U.S.C. § 2244(d)(1)(C). Rather, he arguably asserts that the State created an impediment to timely filing. See 28 U.S.C. § 2244(d)(1)(B).
The impediment theory is based upon reports that Carter believes were suppressed or evidence that was destroyed. Subsection (B) does not apply under such circumstances. The cases applying that subsection "have dealt almost entirely with the conduct of prison officials who interfere with inmates' ability to prepare and to file habeas petitions by denying access to legal materials." Shannon v. Newland , 410 F.3d 1083, 1087-88 (9th Cir. 2005). Typical conditions of prison life, however, do not constitute an unconstitutional state-created impediment. See, e.g., Maclin v. Robinson , 74 Fed.Appx. 587, 589 (6th Cir. 2003) (limited access to prison law library does not constitute a state impediment). Moreover, the claimed impediment must have actually prevented the petitioner from filing a timely petition of a known claim. Wood v. Spencer , 487 F.3d 1, 7-8 (1st Cir. 2007) (finding that Brady violation could not fairly be said to have prevented petitioner from filing timely federal habeas petition). Carter does not allege any facts to show that state or prison officials intentionally denied him access to legal materials or otherwise interfered with his ability to file timely his federal habeas petition.
*852 Carter's alleged Brady violation does not constitute a state-created impediment within the meaning of subsection (B). The term "impediment" refers to the ability to pursue a known claim and is distinct from discovering the factual predicate that is the basis for a claim. Moreover, the Supreme Court has held that a prosecutor's duty to disclose exculpatory evidence under Brady does not continue after the defendant is convicted and the case is closed. See District Attorney's Office for Third Judicial Dist. v. Osborne , 557 U.S. 52, 68, 129 S.Ct. 2308, 174 L.Ed.2d 38 (2009).
Because Carter has not shown that the state created an impediment to his habeas filing, subsection (B) cannot prescribe the beginning point for measuring the statute of limitations.
C. Newly Discovered Evidence
Under section 2244(d)(1)(D), the limitations period begins when the factual predicate for the claim could have been discovered through the exercise of due diligence. Lott v. Coyle , 261 F.3d 594, 605-06 (6th Cir. 2001) ; Brooks v. McKee , 307 F.Supp.2d 902, 905-06 (E.D. Mich. 2004) (citing cases). The period begins when the petitioner knows or could have discovered the important facts for the claim, not when the petitioner recognizes the legal significance of those facts. Brooks , 307 F.Supp.2d at 905-06. The start of the limitations period "does not await the collection of evidence which supports the facts." Id. at 906. A habeas petitioner bears the burden of showing that he exercised due diligence in discovering the factual predicate for his claims within the year preceding his petition filing. DiCenzi v. Rose , 452 F.3d 465, 471 (6th Cir. 2006).
Carter has not met that burden here. Forensic reports with blood typing of the victim and the petitioner were available before trial and were the subject of trial testimony and a stipulation by the parties. See Trial Tr. at 236, 273, 341-43 (Oct. 6, 1986); Trial Tr. at 435-46 (Oct. 7, 1986). Additionally, Carter requested reports and DNA evidence during state post-conviction collateral review proceedings in 2004 and learned that the biological evidence had been destroyed sometime after trial between 1986 and 2001. One must conclude that he was aware of the basis for his claims at that time. But he waited nearly two years to file his motion for new trial in 2006. And he has not explained sufficiently why it took him so many years after his convictions became final to pursue his claims. With the exercise of reasonable diligence, Carter could have discovered the factual basis for his suppression and destruction of evidence and innocence claims well before 2013, which makes his 2014 habeas petition untimely.
D. Equitable Tolling
AEDPA's limitations period is subject to equitable tolling. Holland v. Florida , 560 U.S. 631, 645, 130 S.Ct. 2549, 177 L.Ed.2d 130 (2010). But "a 'petitioner' is 'entitled to equitable tolling' only if he shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." Id. at 649, 130 S.Ct. 2549 (quoting Pace v. DiGuglielmo , 544 U.S. 408, 418, 125 S.Ct. 1807, 161 L.Ed.2d 669 (2005) ); see also Hall v. Warden, Lebanon Corr. Inst. , 662 F.3d 745, 749-50 (6th Cir. 2011) (adopting Holland 's two-part test for determining whether a habeas petitioner is entitled to equitable tolling). "Typically, equitable tolling applied only when a litigant's failure to meet a legally-mandated deadline unavoidably arose from circumstances beyond that litigant's control." Jurado v. Burt , 337 F.3d 638, 642 (6th Cir. 2003) (quoting Graham-Humphreys v. Memphis Brooks Museum of Art, Inc. , 209 F.3d 552, 560 (6th Cir. 2000) ).
*853 Carter has not demonstrated diligence. He has not explained why it took him 14 years after his convictions became final (seven years after the one-year grace period expired) to seek state post-conviction review (not starting until 2004), or why it took him more than 17 years after the one-year grace period expired to seek federal habeas review (in 2014). True, he is untrained in the law, he was proceeding without a lawyer for a period of time, and he may have been unaware of the statute of limitations. The Sixth Circuit has held, however, that none of that warrants tolling. See Keeling v. Warden, Lebanon Corr. Inst. , 673 F.3d 452, 464 (6th Cir. 2012) (pro se status is not an extraordinary circumstance); Allen v. Yukins , 366 F.3d 396, 403 (6th Cir. 2004) (ignorance of the law does not justify tolling); Cobas v. Burgess , 306 F.3d 441, 444 (6th Cir. 2002) (illiteracy is not a basis for equitable tolling); Rodriguez v. Elo , 195 F.Supp.2d 934, 936 (E.D. Mich. 2002) (the law is "replete with instances which firmly establish that ignorance of the law, despite a litigant's pro se status, is no excuse" for failure to follow legal requirements); Holloway v. Jones , 166 F.Supp.2d 1185, 1189 (E.D. Mich. 2001) (lack of professional legal assistance does not justify tolling); Sperling v. White , 30 F.Supp.2d 1246, 1254 (C.D. Cal. 1998) (collecting cases stating that ignorance of the law, illiteracy, and lack of legal assistance do not justify tolling). The petitioner cannot satisfy the equitable tolling requirements under Holland.
E. Actual Innocence
Both the Supreme Court and the Sixth Circuit have held that a credible claim of actual innocence may equitably toll the one-year statute of limitations. McQuiggin v. Perkins , 569 U.S. 383, 386, 133 S.Ct. 1924, 185 L.Ed.2d 1019 (2013) ; Souter v. Jones , 395 F.3d 577, 588-90 (6th Cir. 2005). The courts, however, have set the bar high for such a showing. " '[A] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.' " McQuiggin , 569 U.S. at 386, 133 S.Ct. 1924 (quoting Schlup v. Delo , 513 U.S. 298, 329, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995) ); see also Souter , 395 F.3d at 590.
A qualifying claim of actual innocence requires a petitioner "to support his allegations of constitutional error with new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness account, or critical physical evidence-that was not presented at trial." Schlup , 513 U.S. at 324, 115 S.Ct. 851. Furthermore, actual innocence means "factual innocence, not mere legal insufficiency." Bousley v. United States , 523 U.S. 614, 623, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998). In keeping with the Supreme Court's pronouncements, the Sixth Circuit has recognized that the actual innocence exception should "remain rare" and "only be applied in the 'extraordinary case.' " Souter , 395 F.3d at 590 (quoting Schlup , 513 U.S. at 321, 115 S.Ct. 851 ).
Carter has not presented evidence sufficient to surpass the threshold. The forensic reports are not newly-discovered, nor do they establish his innocence. The trial testimony and laboratory reports indicated that the petitioner's blood type was not found on the victim's panties. See Trial Tr. at 435-36 (Oct. 7, 1986). That evidence, however, does not exclude the petitioner as the perpetrator; it just did not include him as such. Additionally, the petitioner's self-serving, conclusory assertions of innocence are insufficient to support his actual innocence claim. "A reasonable juror surely could discount [a petitioner's] own testimony in support of his own cause."
*854 McCray v. Vasbinder , 499 F.3d 568, 573 (6th Cir. 2007) (collecting cases). Lastly, the evidence of the petitioner's guilt presented at trial was overwhelming. All three victims identified him as the perpetrator, including the victim whom he sexually assaulted over a period of hours. The victims also described the petitioner's "police" uniform and related accessories, which were recovered from the victims' stolen car, Carter's home, and Carter himself. One victim's wallet was also found in the police car used to transport Carter after his arrest. His "newly-discovered" evidence does not demonstrate that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him. His claim of actual innocence will not toll the one-year limitations period.
III.
The petitioner filed his habeas corpus petition long after the one-year statute of limitations expired. He is not entitled to equitable tolling of the limitations period. He has not shown that he is actually innocent of the crime for which he is imprisoned.
Accordingly, it is ORDERED that the petition for writ of habeas corpus is DISMISSED .