RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 12a0060p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

—————————

MURAD WILLIAMS,

*Petitioner-Appellee,*

*v.*

No. 10-1441

THOMAS BIRKETT,

*Respondent-Appellant.*

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 07-15376—Arthur J. Tarnow, District Judge.

Argued: November 30, 2011

Decided and Filed: February 29, 2012

Before: GILMAN, ROGERS, and STRANCH, Circuit Judges.

—————————

## COUNSEL

**ARGUED:** Janet A. Van Cleve, OFFICE OF THE MICHIGAN ATTORNEY GENERAL, Lansing, Michigan, for Appellant. Loren E. Khogali, FEDERAL DEFENDER OFFICE, Detroit, Michigan, for Appellee. **ON BRIEF:** Brad H. Beaver, OFFICE OF THE MICHIGAN ATTORNEY GENERAL, Lansing, Michigan, for Appellant. Loren E. Khogali, Natasha D. Webster, FEDERAL DEFENDER OFFICE, Detroit, Michigan, for Appellee.

—————————

## OPINION

—————————

ROGERS, Circuit Judge. The warden appeals Murad Williams's unconditional grant of federal habeas relief under 28 U.S.C. § 2254. The district court held that the habeas petition was filed within the one-year time limit of AEDPA based in part on the court's determination that Williams's untimely second state collateral attack was "properly filed" so as to toll the limitations period. *See* 28 U.S.C. § 2244(d)(2).

1

Because Michigan law does not allow the filing of second motions for post-conviction relief, with two exceptions not applicable in Williams's case, Williams's second motion was not "properly filed" under the reasoning of the Supreme Court's decision in *Pace v. DiGuglielmo*, 544 U.S. 408 (2005). Williams's habeas petition was therefore not timely, unless equitable tolling is warranted. The district court did not reach the issue of equitable tolling, and remand is warranted to determine whether the statute of limitations in Williams's case may be equitably tolled.

In 2003, Murad Williams pled guilty to unarmed robbery under M.C.L. § 750.530. Judge Maggie Drake presided over the hearing in Wayne County, Michigan. The underlying crime, which occurred when Williams was 17 years old, appears to have been relatively minor: Williams jumped out of a car, hit an individual that he knew in the stomach, and stole ten dollars. Williams was 18 years old at the time of his plea, had no prior criminal history, and had not finished high school. Williams's mother informed Judge Drake that her son suffered from A.D.H.D. and had been in special education classes since the first grade.

On March 12, 2004, Williams appeared before the state trial court for sentencing. Despite reservations about Williams's "attitude," Judge Margie Braxton sentenced Williams to probation under the Holmes Youthful Trainee Act, on the condition that he serve 90 to 120 days in a boot camp program. Michigan's Holmes Youthful Trainee Act "allows certain youthful offenders to plead guilty and complete a youth training program, during which the entry of a judgment of conviction is held in abeyance. If the offender successfully completes the program, the charges are dismissed and there is no conviction." *Does v. Munoz*, 507 F.3d 961, 965 (6th Cir. 2007) (citation omitted). *See* M.C.L.A. § 762.11. Williams's initial sentencing guidelines range was zero to 11 months, and Williams was warned that if he "quit[] or [did] not fulfill the requirements of Boot Camp," he would be sent to prison.

On May 3, 2004, less than two months after his initial sentencing, Williams was referred back to the trial court for violating the rules of the boot camp program. Judge Drake, who had heard Williams's initial guilty plea, presided over the hearing. Friends

and family spoke at the hearing, offering to provide Williams with counseling and employment if the court allowed him to continue on probation. However, Judge Drake found that Williams had failed to comply with the terms of his probation and sentenced him to 1 to 15 years in prison. The hearing took only 20 minutes. Williams served a total of 6 years in prison because he was repeatedly denied parole.

Williams did not file a direct appeal from his sentence. Thus, the judgment for revocation of his probation became final for the purposes of the federal habeas statute of limitations, 28 U.S.C. § 2244(d)(1)(A), on May 3, 2005, after the one-year time limit for filing a direct appeal in the Michigan Court of Appeals expired pursuant to Michigan Court Rules ("M.C.R.") 7.205(F)(3). *See Jagodka v. Lafler*, 148 F. App'x 345, 346 (6th Cir. 2005). On September 1, 2005, Williams requested the appointment of appellate counsel. On November 28, 2005, about seven months after the judgment became final, appellate counsel filed the first motion for relief from judgment pursuant to M.C.R. 6.500 *et. seq*. At a hearing before Judge Drake on January 23, 2006, the trial court denied the motion. Judge Drake explained that since Williams had been warned at his original sentencing, he would not be entitled to a subsequent probation-violation hearing. Also on January 23, 2006, Williams submitted an application for leave to appeal to the Michigan Court of Appeals.

On June 19, 2006, while his first post-conviction motion was pending in the Michigan Court of Appeals, Williams filed a second motion for relief from judgment in the state trial court. On August 2, 2006, the Michigan Court of Appeals denied Williams's application for leave to appeal the denial of his first post-conviction motion. On September 18, 2006, Williams filed a *pro se* application for leave to appeal to the Michigan Supreme Court.

Eleven days later, on September 29, 2006, the state trial court rejected Williams's second post-conviction motion and returned it to Williams, stating that because Williams had already filed a previous motion for relief from judgment, he was precluded under M.C.R. 6.502(G) from filing a second or successive motion. In addition to the letter returning the motion, the court also filed a brief one-sentence order denying the second

motion.  The Michigan Supreme Court then denied Williams leave to appeal the denial of his first post-conviction motion on December 13, 2006.  On September 21, 2007, Williams filed an application for leave to appeal the denial of his second post-conviction motion in the Michigan Court of Appeals.  On October 26, 2007, the Michigan Court of Appeals dismissed Williams's appeal because M.C.R. 6.502(G)(1) precludes a defendant from appealing the denial or rejection of a successive motion for relief from judgment. Williams did not seek leave to appeal this denial in the Michigan Supreme Court.

On December 13, 2007, Williams filed a *pro se* petition for writ of habeas corpus in the federal district court below.[1]  Williams also filed a motion requesting equitable tolling to allow his petition to proceed as timely.  The state filed a motion to dismiss the habeas corpus petition on the ground that it was barred by the statute of limitations found in 28 U.S.C. § 2244(d)(1).  The district court denied the state's motion to dismiss, determining that Williams's habeas petition was timely because it was tolled while the second motion for relief from judgment was pending in state court.  Though a successive motion for relief from judgment is barred under M.C.R. 6.502(G)(1), the district court held that according to this court's decision in *Palmer v. Carlton*, 276 F.3d 777, 779 (6th Cir. 2002), successive motions will toll the limitations period pursuant to 28 U.S.C. § 2244(d)(2). *See also Brown v. Burt*, 224 F. Supp. 2d 1152, 1155-56 (E.D. Mich. 2002). Therefore, according to the district court, "[t]he limitations period in this case was tolled until at least October 26, 2007, when the Michigan Court of Appeals dismissed petitioner's second post-conviction appeal."  Because Williams's habeas petition was determined to be timely, the district court did not address Williams's equitable tolling arguments.  The district court also ordered the state to file an answer to the habeas petition, which the state did. The district court referred the case to a magistrate judge, who recommended that the petition be granted and that a conditional writ of habeas corpus be issued. After an evidentiary hearing, the district court issued Williams an

---

[1]Williams states in his brief that the petition was filed on December 18, 2007.  However, the district court determined that because the petition was dated and signed on December 13, 2007, according to the prison mailbox rule, December 13 was the appropriate date to consider when assessing AEDPA's one-year limitations period. *See Hudson v. Martin*, 68 F. Supp. 2d 798, 799 n.2 (E.D. Mich. 1999).

unconditional writ of habeas corpus on ineffective-assistance-of-counsel and due-process grounds. The state appeals.

Both parties agree that Williams's first motion for post-conviction relief, which was filed on November 28, 2005, tolled the limitations period until December 13, 2006, when the Michigan Supreme Court denied leave to appeal. By the time Williams had filed his first post-conviction motion, 209 days had already elapsed. The parties now disagree as to whether Williams's second post-conviction motion, filed on June 19, 2006 (while Williams's first post-conviction motion was pending), was properly filed and thus tolled the remaining 156 days. According to the district court and Williams, the second post-conviction motion was properly filed, and therefore the one-year limit should have expired on March 30, 2008, 156 days after the Michigan Court of Appeals denied his application to appeal the denial of his second post-conviction motion. This would have meant that Williams's habeas petition, filed on December 13, 2007, would have been timely. However, because Williams's second state post-conviction motion was successive and thus not "properly filed," the state argues that the one-year time limit expired 156 days after December 13, 2006, the day that the Michigan Supreme Court rejected his application to appeal his first post-conviction motion. This means that Williams's one-year limit actually expired on May 18, 2007, and thus his habeas corpus petition was not timely.

The State is correct on this point. Because Williams's second post-conviction motion was not "properly filed" under § 2244(d)(2), his successive motion did not toll the statute of limitations and thus Williams's habeas petition was statutorily untimely. It is true that the Supreme Court has held that a substantive basis for rejecting a state collateral attack—such as procedural default—does not keep a post-conviction motion from being "properly filed." *Artuz v. Bennett*, 531 U.S. 4, 10-11 (2000). But the Supreme Court later clarified that an untimely post-conviction motion is not "properly filed," even if the state law provides claim-specific exceptions to the applicability of the time limit. *Pace v. DiGuglielmo*, 544 U.S. 408, 417 (2005).

Even though Williams's case does not involve a time limit, the case is more like *Pace* than *Artuz*. Section 2244(d)(2) provides that the "time during which a *properly filed* application for State post-conviction or other collateral review . . . is pending shall not be counted toward any period of limitation under this subsection." 28 U.S.C. § 2244(d)(2) (emphasis added). The Supreme Court has defined "properly filed" as "when [an application's] delivery and acceptance are in compliance with the applicable laws and rules governing filings." *Artuz*, 531 U.S. at 8. Michigan law, instead of imposing a time limit on successive motions, flatly forbids them, unless they fall within two narrow exceptions: motions based on (1) "a retroactive change in law that occurred after the first motion for relief from judgment," or (2) "a claim of new evidence that was not discovered before the first such motion." M.C.R. 6.502(G)(2). Because impermissible successive motions cannot be filed, they cannot be "accepted" by the state court and thus are not "properly filed" for tolling purposes under § 2244(d)(2).

In *Pace*, the Supreme Court held that an untimely post-conviction motion was not "properly filed" under § 2244(d)(2), and thus did not toll AEDPA's one-year time limitation. The Court reasoned that "a petition that cannot even be initiated or considered . . . is not 'properly filed,'" and timeliness "go[es] to the very initiation of a petition and a court's ability to consider that petition." *Pace*, 544 U.S. at 417. Similarly, M.C.R. 6.502(G)(1) is "a condition to filing, as opposed to a condition on obtaining relief," *Artuz*, 531 U.S. at 11, because like the timeliness rule in *Pace*, Michigan's rule against successive motions prevents a second petition from even being considered by the court. *See Rodriguez v. McQuidgen*, No. 08-CV-13263, 2009 WL 2742004, at *8 (E.D. Mich. Aug. 25, 2009). Therefore, Williams's second motion was not "properly filed," and his subsequent habeas petition was untimely.

Though there are two exceptions to Michigan's bar to successive motions for relief from judgment, M.C.R. 6.502(G)(2), the timeliness requirement in *Pace* contained almost identical exceptions. The Michigan rule allows for successive motions when there is "a retroactive change in law that occurred after the first motion for relief from judgment" or "a claim of new evidence that was not discovered before the first such

motion," *id.*; similarly, the Pennsylvania timeliness rule discussed in *Pace* included exceptions for when "a new constitutional rule is made retroactive" or "if new facts arise that could not have been discovered through due diligence," *Pace*, 544 U.S. at 410 n.1 (citing 42 Pa. Cons. Stat. §§ 9545(b)(1)(ii)-(iii)). In examining the timeliness exceptions, the Supreme Court reasoned that according to the "common understanding" of "properly filed," "a petition filed after a time limit, and which does not fit within any exceptions to that limit, is no more 'properly filed' than a petition filed after a time limit that permits no exception." *Pace*, 544 U.S. at 413. According to this rationale, the similar exceptions to the Michigan rule forbidding successive motions do not provide a basis for distinguishing *Pace*.

Williams argues that because the exceptions require a judge to determine if they apply, they do not go to the very initiation of a petition. But the Supreme Court in *Pace* explicitly rejected the argument that rules that "necessitate judicial scrutiny," such as "jurisdictional matters and fee payments," may not still be considered "condition[s] to filing." *Id.* at 414-15 (discussing *Artuz*, 531 U.S. at 9). In *Pace*, the Supreme Court "fail[ed] to see how timeliness [even with judicially considered exceptions] is any less [of] a 'filing' requirement than the mechanical rules that are enforceable by clerks, if such rules exist." *Pace*, 544 U.S. at 415. The Court further noted that if "conditions of filing" were limited to those situations solely handled by the clerk, as Williams also argues, few if any rules would constitute "filing" conditions. *Id.* at 415 n.5. Therefore, even though M.C.R. 6.502(G)(2) may require judicial scrutiny to determine whether an exception applies, that does not require this court to hold that a successive motion in Michigan may be considered "properly filed." Indeed, the exceptions to untimeliness discussed and dismissed in *Pace*, including retroactivity of the law and the discovery of new facts, are similar to those in M.C.R. 6.502(G)(2). *See Pace*, 544 U.S. at 410 n.1, 416.

Further justifying the application of *Pace* to this case, the Supreme Court notably relied on the federal second or successive motion provision in rejecting an argument concerning applications versus applying a condition on a claim-by-claim basis. In *Pace*,

the petitioner argued that because § 2244(d)(2) refers to a "properly filed *application*," a condition that must be applied on a claim-by-claim basis could not be considered a "condition to filing." *Pace*, 544 U.S. at 415. However, the Supreme Court explicitly rejected this argument, noting that although § 2244(b)(3)(c) refers to successive *applications*, applying the "requirements" of the subsection involves inquiries into specific claims similar to the exceptions in M.C.R. 6.502(G)(2): namely, whether a claim relies on a new rule that was made retroactive, § 2244(b)(2)(A), or a new factual predicate, § 2244(b)(2)(B). *Pace*, 544 U.S. a 415-16.

This reasoning supports the application of *Pace* to Michigan's provision barring second or successive post-conviction motions. Like § 2244(b)(3)(C), which refers to the entire application, M.C.R. 6.502(G)(1) states that "successive motions" should be denied "[e]xcept as provided in subrule (G)(2)." Subrule G(2), like the requirements in § 2244(b)(2)(A) and (B), allows for the filing of a successive petition in Michigan state court if there is a claim based upon a "retroactive change in law" or a "claim of new evidence." The fact that a state judge must examine a successive motion in Michigan to determine whether one of the exceptions in M.C.R. 6.502(G)(2) applies is no different than the federal rule relied upon in *Pace* where a federal judge must see whether any of the requirements for filing a successive motion are met.

The determination that Williams's second motion was not "properly filed" under M.C.R. 6.502(G), and thus did not toll the statute of limitations under AEDPA, is supported by our decision, albeit unpublished, in *Geno v. Metrish*, 393 F. App'x 299, 300 n.1 (6th Cir. 2010). In *Geno*, we examined M.C.R. 6.502(G) and held that a successive motion denied by a Michigan state court "[does] not serve to toll the limitations period, because the Michigan courts [have] held it was an impermissible successive motion for relief from judgment, and thus it was not 'properly filed' under 28 U.S.C. § 2244(d)(2)." *Id.* The district courts in Michigan have generally reached the same conclusion, although a couple of opinions are to the contrary. A forceful analysis is contained in *Rodriguez v. McQuidgen*, No. 08-CV-13263, 2009 WL 2742004, at *8 (E.D. Mich. Aug. 25, 2009), which determined that "[t]he Michigan rule barring second

or successive motions for relief from judgment is . . . akin to the state timeliness rule considered in *Pace*" and thus "a second motion rejected under Rule 6.502(G) does not toll the limitations period." *See also Smith v. Ludwick,* No. 2:08-CV-12567, 2010 WL 1139332, at *2 (E.D. Mich. Mar. 24, 2010) (holding that a motion barred by M.C.R. 6.502(G) is not "properly filed" and thus does not toll the limitations period); *Smith v. Berghuis*, No. 07-14140, 2008 WL 2357696, at *2 (E.D. Mich. June 9, 2008) (same); *Raines v. Berghuis*, No. 07-10605, 2008 WL 2157049, at *4 (E.D. Mich. May 22, 2008) (same); *Smith v. Berghuis*, No. 1:07-CV-1179, 2008 WL 724166, at *6 (W.D. Mich. Mar. 17, 2008) (same); *and Mardenli v. Berghuis*, No. 1:07-CV-1078, 2008 WL 696600, at *5 n.3 (W.D. Mich. Mar. 13, 2008) (same). *But see Cristini v. McKee*, No. 01-CV-74483DT, 2003 WL 21817823, at *3 (E.D. Mich. July 9, 2003) (reaching the opposite conclusion in dicta); *Brown v. Burt*, 224 F. Supp. 2d at 1155-56 (reaching the opposite conclusion).

We do not need to rely on the language of the Michigan statute requiring the court to "return without filing" any successive motion, although if anything the language cuts in the direction of our holding. M.C.R. 6.502(G)(1) provides:

> [R]egardless of whether a defendant has previously filed a motion for relief from judgment, after August 1, 1995, one and only one motion for relief from judgment may be filed with regard to a conviction. The *court shall return without filing* any successive motions for relief from judgment. A defendant may not appeal the denial or rejection of a successive motion.

M.C.R. 6.502(G)(1) (emphasis added).

Our decision in *Palmer v. Carlton*, 276 F.3d 777, 779 (6th Cir. 2002), which reasoned that an unpermitted second Tennessee post-conviction motion was nonetheless "properly filed," does not require a similar result in this case. Most importantly, *Palmer* was decided more than three years before *Pace*, and the analysis in *Pace* controls here. In addition, our reasoning regarding whether the second Tennessee post-conviction motion was "properly filed" was not strictly necessary to our holding in *Palmer*, as the habeas petition was ultimately held to be untimely for alternative reasons. *Id.* at 779-80.

Finally, Williams argues that his second post-conviction motion was "properly filed" because the court entered an order denying the motion, and thus "a defendant [would] believe that his motion had been properly filed." This goes more to whether the statute should be equitably tolled than to whether the motion was "properly filed." It should be noted, in addition, that Williams received a letter from the trial court on September 29, 2006, explaining that the motion was being "return[ed] . . . in accordance with M.C.R. 6.502(G)(1) & (2)."

Because Williams's second post-conviction motion was denied under M.C.R. 6.502(G), and thus was not "properly filed" under § 2244(d)(2), his successive motion did not toll AEDPA's one-year time limitation. Therefore, Williams's habeas petition was untimely, unless equitably tolled. The district court did not address the issue of equitable tolling because the court held that the statute of limitations had not expired at the time that Williams filed his federal habeas petition. As the question of "[w]hether equitable tolling is warranted is a fact-intensive inquiry best left to the district courts," *Robertson v. Simpson*, 624 F.3d 781, 785-86 (6th Cir. 2010), the district court should rule on equitable tolling in the first instance.

The judgment is vacated and remanded for further proceedings consistent with this opinion.