RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 23a0169p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
─────────────────

STEPHEN J. KARES,

                *Petitioner-Appellant*,

      *v*.

BRYAN MORRISON, Warden,

                *Respondent-Appellee*.

> No. 21-2845

Appeal from the United States District Court for the Western District of Michigan at Marquette.
No. 2:19-cv-00007—Hala Y. Jarbou, District Judge.

Argued:  May 3, 2023

Decided and Filed:  August 8, 2023

Before:  MOORE, CLAY, and GIBBONS, Circuit Judges.
─────────────────

### COUNSEL

**ARGUED:**  Brendan Bernicker, RODERICK & SOLANGE MACARTHUR JUSTICE CENTER, Washington, D.C., for Appellant.  Linus Banghart-Linn, OFFICE OF THE MICHIGAN ATTORNEY GENERAL, Lansing, Michigan, for Appellee.  **ON BRIEF:** Brendan Bernicker, RODERICK & SOLANGE MACARTHUR JUSTICE CENTER, Washington, D.C., Easha Anand, RODERICK & SOLANGE MACARTHUR JUSTICE CENTER, San Francisco, California, for Appellant.  Scott R. Shimkus, OFFICE OF THE MICHIGAN ATTORNEY GENERAL, Lansing, Michigan, for Appellee.  Eugene M. Gelernter, PATTERSON BELKNAP WEBB & TYLER LLP, New York, New York, Matthew McGinnis, ROPES & GRAY LLP, Boston, Massachusetts, for Amici Curiae.

—————————

**OPINION**

—————————

CLAY, Circuit Judge.  Petitioner, Stephen Kares, appeals the district court's denial of his habeas petition brought pursuant to 28 U.S.C. § 2254.  In 2012, a jury convicted Kares of third-degree criminal sexual conduct in violation of Mich. Comp. Laws § 750.520d(1)(b).  For the reasons set forth below, we **REVERSE in part** the district court's order denying as untimely Petitioner's motion to vacate his sentence but **DENY** Kares' motion to expand the certificate of appealability ("COA") to include his merits claim.

## I.  BACKGROUND

### A.  Factual Background

In 2012, a jury found Kares guilty of raping a 16-year-old girl.  *See People v. Kares*, No. 312680, 2013 WL 6124313, at *1–2 (Mich. Ct. App. Nov. 21, 2013).[1]  The victim was the child of a woman whom Kares had been dating.  After the rape, the victim visited a nurse who examined her and collected samples from her for a rape kit.  *Id*. at *1.  The samples obtained from the rape kit were tested and the Michigan State Police Forensic Scientist who conducted the testing appeared at trial and testified that the DNA samples resulted in a match to Kares' DNA.  *Id.*  At trial, Kares did not contest that the victim had visited his house on the night of the rape; instead, he argued that no sexual contact occurred.  *Id.* at *2.  Kares testified that he had engaged in sexual intercourse with another woman three or four days prior and had disposed of a vaginal condom in the trash.  *Id.*

### B.  Procedural History

Kares was convicted of third degree criminal sexual conduct following a jury trial in Michigan's Shiawassee County Circuit Court.  At sentencing, the judge found five "Offense

---

[1]The factual history provided herein cites to the Michigan Court of Appeal's summary of facts and is entitled to a presumption of correctness pursuant to 28 U.S.C. § 2254(e)(1).  *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *see also Coleman v. Bradshaw*, 974 F.3d 710, 717 n.3 (6th Cir. 2020).

Variables" that increased Kares' sentencing range, including the mandatory minimum. Sentencing Tr., R. 21-8. While Kares' case was on appeal to the Michigan Court of Appeals, the United States Supreme Court decided *Alleyne v. United States*, 570 U.S. 99 (2013). *Alleyne* held that the Constitution requires any fact that increases the mandatory minimum penalty for a crime to be found by a jury beyond a reasonable doubt. 570 U.S. at 116. Kares' appellate counsel failed to raise an *Alleyne* claim on direct appeal. Kares' conviction and sentence were affirmed by the Michigan Court of Appeals and then, on September 29, 2014, by the Michigan Supreme Court. The time for Kares to appeal to the Supreme Court of the United States expired 90 days later, on December 28, 2014. U.S. Sup. Ct. R. 13.

Kares then began collateral review proceedings in Michigan state court. He filed his first motion for relief from judgment pursuant to Michigan Court Rule ("MCR") 6.500 *et seq.* on October 20, 2015. Through that motion, Kares raised several issues, including that his sentence was based on inaccurate information, and that he had ineffective assistance of trial and appellate counsel. The trial court denied his motion, determining that his claims were procedurally defaulted and should have been raised on direct appeal. Kares then applied for leave to appeal the denial of his motion for relief from judgment, citing *Alleyne* for the first time. The Michigan Court of Appeals denied Kares' appeal in a short order. Kares applied for leave to appeal to the Michigan Supreme Court, but this request was denied on December 27, 2017.

On February 9, 2018, Kares filed a motion with the Michigan trial court under Michigan Compiled Laws ("MCL") § 770.16 requesting that the court order additional DNA testing. The motion requested the testing of biological materials that Kares claims were not tested, including evidence collected by the nurse who administered the rape kit[2] and bedding from Kares' apartment. The trial court denied his request on February 12, 2018. In the order denying his request for biological testing, the trial court noted that Kares' motion failed to address the

---

[2]The nurse who administered the rape kit collected swabs, smears, wipes, and the victim's underwear. The forensic scientist tested all items that were collected and reported that all of the swabs (except for the oral swabs), anal and vaginal smears, and the undergarments tested positive for the presence of semen (but did not conduct DNA testing on all of the semen). She then DNA tested the anal and vaginal smears and located genetic material from Kares and the victim in those samples. Petitioner sought to have the other swabs DNA tested–those swabs previously tested positive for the presence of sperm (the speculum, labial fold, and external swabs).

statutory requirements for showing he qualified to petition the Court to order DNA testing, and he also failed to present proof that that DNA testing was warranted in his case.

Kares then filed an application for leave to appeal the trial court's order denying his request for biological testing. The Michigan Court of Appeals denied him leave to appeal on August 29, 2018. Kares then applied for leave to appeal to the Michigan Supreme Court. While that motion was pending, Kares filed the instant § 2254 petition in federal court on December 21, 2018. The Michigan Supreme Court denied Kares' application for leave to appeal the denial of his motion for biological testing on April 2, 2019. Kares then requested that the district court permit him to amend his § 2254 petition to include claims related to his DNA testing request. The district court permitted Kares to amend his petition, and he filed his amended petition on May 28, 2019.

The district court referred Kares' petition to a magistrate judge who produced a report and recommendation ("R&R") determining that the district court should deny Kares' petition as untimely. The R&R analyzed MCL § 770.16 and determined that Kares' petition for DNA testing was not a properly filed collateral attack; it also analyzed the merits of Kares' claims and found that they were either lacking merit or procedurally defaulted. Kares objected to the R&R, arguing that his petition was timely, his claims had merit, and his claims were not procedurally defaulted.

The district court adopted the R&R. In its order, the court found that Kares' § 770.16 motion was not a properly filed application for collateral review; addressed the merits claims to which Kares had objected; and agreed with the R&R that those claims also lacked merit or were procedurally defaulted. The district court granted a COA to Kares on the question of whether motions brought pursuant to MCL § 770.16 toll the statute of limitations under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), but denied a COA on all of Kares' other claims.

Kares timely filed this appeal. Kares also filed a motion requesting that the COA be expanded to include his merits claim that the state trial court committed an *Alleyne* violation and that this claim was not procedurally defaulted because his state appellate counsel provided ineffective assistance of counsel.

## II.  DISCUSSION

### A.  Timeliness of Habeas Petition

AEDPA sets a time limit for petitioners to apply for a writ of habeas corpus, requiring a petition to be filed within one year after the judgment becomes final.[3]  28 U.S.C § 2244(d)(1)(A). The statute permits the tolling of the limitations period during the time period during which "a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending."  28 U.S.C. § 2244(d)(2).

This Court reviews the dismissal of a § 2254 petition *de novo*.  *Thomas v. Meko*, 828 F.3d 435, 438 (6th Cir. 2016).  Whether the district court properly calculated the timeliness of a habeas corpus petition is reviewed *de novo*.  *DiCenzi v. Rose*, 452 F.3d 465, 467 (6th Cir. 2006). The district court's factual findings are reviewed for clear error.  *Boggs v. Collins*, 226 F.3d 728, 736 (6th Cir. 2000).

In Kares' case, the statute of limitations began to run 90 days[4] after the Michigan Supreme Court denied his request for leave to appeal his conviction, on December 28, 2015. With only 69 days left to file a § 2254 petition, Kares tolled the running of that time period on October 20, 2015 by filing a motion for relief from judgment in the Shiawassee County Circuit Court.  The statute of limitations began to run again once Kares' post-conviction proceedings terminated on December 27, 2017.  This meant that Kares had until March 6, 2018—69 days later—to file a federal habeas petition.  Kares did not file his habeas petition until December 21, 2018.  Kares, however, argues that the MCL § 770.16 petition for DNA testing, which he filed on February 9, 2018, tolled the limitations period.

For Kares' habeas petition to be considered timely, this Court must answer two questions in the affirmative:  (1) was Kares' petition for DNA testing pursuant to MCL § 770.16 properly filed; and  (2) are motions for DNA testing pursuant to MCL § 770.16 considered post-

---

[3]Section 2244(d)(1) sets forth three additional circumstances which begin the one-year limitations period, but only the first ground is at issue in this case.

[4]Ninety days is the time period to file a petition for certiorari to the United States Supreme Court.  *See* U.S. Sup. Ct. R. 13.

conviction or other collateral review proceedings that toll the AEDPA limitations period? We address both questions in turn.

### 1. Kares' motion was "properly filed"

MCL § 770.16 permits defendants convicted of a felony at trial to petition the circuit court where they were sentenced to order DNA testing of biological materials. The statute permits this sort of petition for any defendant convicted before 2001, but requires defendants convicted on or after January 8, 2001 to establish that all of the following apply: "(a) That DNA testing was done in the case or under this act[;]" "(b) [t]hat the results of the testing were inconclusive[;]" and "(c) [t]hat testing with current DNA technology is likely to result in conclusive results." MCL § 770.16(1). The statute provides that a court shall order DNA testing only if a defendant does all of the following:

> (a) Presents prima facie proof that the evidence sought to be tested is material to the issue of the convicted person's identity as the perpetrator of, or accomplice to, the crime that resulted in the conviction.

> (b) Establishes all of the following by clear and convincing evidence:

>> (i) A sample of identified biological material described in subsection (1) is available for DNA testing.

>> (ii) The identified biological material described in subsection (1) was not previously subjected to DNA testing or, if previously tested, will be subject to DNA testing technology that was not available when the defendant was convicted.

>> (iii) The identity of the defendant as the perpetrator of the crime was at issue during his or her trial.

MCL § 770.16(4) (2015).

Respondent argues that Kares' petition for DNA testing was not properly filed because Kares failed to satisfy the conditions for petitioning the court specified in MCL § 770.16(1). Kares argues that those conditions are not conditions to filing since they do not relate to the form of the motion, the time limit for filing it, or the proper forum, but are instead merits determinations.

The Supreme Court has analyzed the question of what constitutes a "properly filed application" in only a few cases. In the first case, the Supreme Court determined that a state defendant's post-conviction motion to vacate his judgment tolled AEDPA's one year limitations period even though the claims raised within that application were procedurally barred. *Artuz v. Bennett*, 531 U.S. 4, 8 (2000). *Artuz* noted that an application is properly filed when "its delivery and acceptance are in compliance with the applicable laws and rules governing filings" and noted that the procedural bars listed in the state statute presented a "condition to obtaining relief" and did not "set forth a condition to filing." 531 U.S. at 8, 11.

In *Pace v. DiGuglielmo*, the Supreme Court determined that AEDPA's one year limitations period was not tolled by a state court post-conviction petition that was dismissed by the state court for being untimely. 544 U.S. 408, 417 (2005). The Supreme Court determined that although the state court was required to review the petition to assess whether it fit into statutory exemptions for the time limit, timeliness was still a "condition to filing" and noted that "there is an obvious distinction between time limits, which go to the very initiation of a petition and a court's ability to consider that petition, and the type of 'rule of decision' procedural bars at issue in *Artuz,* which go to the ability to obtain relief." *Id.* The Supreme Court later reiterated its rule that a state post-conviction petition that is dismissed as untimely does not toll the AEDPA limitations period, regardless of whether the "time limit is jurisdictional, an affirmative defense, or something in between." *Allen v. Siebert*, 552 U.S. 3, 6 (2007).

The Sixth Circuit has also addressed the "properly filed" requirement of § 2244. In *Williams v. Birkett*, the Court determined that a successive post-conviction motion was not properly filed where it was rejected by the state court because it failed to meet the requirements listed in the state statute for bringing successive motions. 670 F.3d 729, 736 (6th Cir. 2012). In *Williams*, this Court noted that MCR 6.502(G) flatly forbids defendants from filing successive post-conviction motions for relief from judgment unless the successive petition demonstrates that it falls into one of the exceptions listed in the statute, including "motions based on (1) 'a retroactive change in law that occurred after the first motion for relief from judgment,' or (2) 'a claim of new evidence that was not discovered before the first such motion.'" 670 F.3d at 733 (citing MCR 6.502(G)(2)). This Circuit noted that even though "judicial scrutiny" was required

to assess whether a statutory exception applied to permit a successive petition, those exceptions remained filing conditions because a successive petition cannot be considered by the state court unless it meets one of those two exceptions. *Id*. at 734.

An unsuccessful motion may still toll the limitations period, so long as the petitioner complies with all filing requirements. In *Board v. Bradshaw*, this Circuit determined that a motion for leave to file a delayed appeal brought under Ohio Appellate Rule 5(A) was properly filed and tolled AEDPA's statute of limitations. 805 F.3d 769, 776 (6th Cir. 2015). Although the *Board* petitioner's motion for a delayed appeal was ultimately unsuccessful, this Circuit determined that his motion was properly filed because the Ohio rule contained no time limit for filing such motions and because his motion complied with all filing conditions, namely the requirements listed in the statute that the application must "set forth the reasons for the failure . . . to perfect an appeal." *Id*. at 773 (quoting Ohio App. R. 5(A)(2). This Court noted that "[o]nce the movant has provided these explanations, the conditions to filing the Rule 5(A) motion have been satisfied." *Id*. at 775.

In *Thomas v. Meko*, the Sixth Circuit addressed a case similar to *Artuz*, regarding whether a petitioner's successive post-conviction motion could be considered properly filed. 828 F.3d at 435. This Circuit determined that the petitioner's motion for post-conviction relief in Kentucky state court was properly filed and tolled the AEDPA statute of limitations, even where that petition was unsuccessful because it contained procedurally defaulted claims. *Id*. at 440. This Court examined the underlying state court order on the petitioner's motion, noting that the Kentucky courts had adjudicated that motion on the merits instead of rejecting it for failing to meet "state laws and rules governing filings." *Id*. at 439–40 (internal quotation marks omitted).

Turning to the facts of this case, Kares' motion was properly filed. MCL § 770.16 lists the conditions for filing a petition for DNA testing in only one section of the statute, which requires only that a "petition under this section *shall be filed* in the circuit court for the county in which the defendant was sentenced." MCL § 770.16(2) (emphasis added). The government does not dispute that Kares filed his petition for DNA testing in the correct court. Additionally, the fact that Kares' petition was ultimately unsuccessful because he could not meet the requirements for testing does not mean that his petition was improperly filed. *See Pace*,

544 U.S. at 417; *Board*, 805 F.3d at 776. Just as this Court previously noted in *Thomas*, "[r]ules governing filings, in the main, speak to the court clerk; rules setting forth a procedural bar speak to the court itself." 828 F.3d at 439.

The conditions listed in sections (1) and (4) of MCL § 770.16 are the merits determinations that the state court must make when deciding whether the petitioner is entitled to further DNA testing. This is evidenced by the fact that the legislature used the words "may petition" in section (1) of MCL § 770.16 instead of the words "may file." Given that the legislature used the words "shall be filed" in section (2) of MCL § 770.16, we may rely on the presumption that where a legislature "includes particular language in one section of a statute but omits it in another section," it acts "intentionally and purposely in the disparate inclusion or exclusion." *Dean v. United States*, 556 U.S. 568, 573 (2009) (quoting *Russello v. United States,* 464 U.S. 16, 23 (1983)).

Furthermore, the state court considering Kares' petition did not reject the petition for failing to meet a filing condition, and instead addressed the merits of his request. Unlike the statute at issue in *Williams*, the Michigan DNA testing statute does not impose a substantive condition to filing. *See Williams*, 670 F.3d at 730 (analyzing MCR 6.502(G)(2) and determining that the law "does not allow the filing of second motions for post-conviction relief" unless one of two listed conditions is met). Although Michigan courts do conduct a sequential analysis by first assessing whether a petition meets the requirements listed in section (1) of MCL § 770.16 before turning to the factors articulated in section (4), they do not flatly return without filing a petition that does not meet the requirements in section (1). *Cf. Williams* 670 F.3d at 731 (noting that state trial court "rejected" and "returned" petitioner's motion for failing to meet requirements for filing a second or successive motion for relief from judgment). Accordingly, we find that Kares' motion was properly filed.

### 2. Kares' petition for DNA testing constituted a post-conviction or other collateral review proceeding

To toll AEDPA's limitations period, the DNA petition filed by Kares must also satisfy another requirement: it must be an "application for State post-conviction or other collateral review." 28 U.S.C. § 2244(d)(2). Kares argues that his motion pursuant to MCL § 770.16 is an

application for collateral review because the statute contemplates that a court will review the underlying judgment in deciding whether to order testing and a new trial.  Respondent argues that Kares' motion does not count as an application for collateral review because MCL § 770.16 is a sequential statute, and a petitioner must first clear several statutory hurdles before a court can even review the underlying judgment.

The Supreme Court addressed the question of whether a particular motion under state law was a motion for "post-conviction or other collateral review" in *Wall v. Kholi*, 562 U.S. 545 (2011).  In *Wall*, the Supreme Court determined that a motion to reduce a sentence brought pursuant to Rule 35 of Rhode Island's Superior Court Rules of Criminal Procedure was a motion for collateral review of the sentence and therefore tolled AEDPA's one year limitations period. 562 U.S. at 555.  The Supreme Court noted that although methods of filing for collateral review may vary among the states, collateral review "refers to judicial review that occurs in a proceeding outside of the direct review process." *Id*. at 560.

The Supreme Court and the Sixth Circuit have not yet addressed the question of whether motions for DNA testing under Michigan law are a form of collateral or post-conviction review. In an unpublished opinion, a panel of this Court determined that post-conviction discovery motions under Ohio law are not a form of collateral or post-conviction review and do not toll AEDPA's limitations period. *Johnson v. Randle*, 28 F. App'x 341, 343 (6th Cir. 2001) ("The request for information and the request for a copy of the record are not challenges to the conviction or judgment.  Therefore, these requests do not toll the statute of limitations."). Although dicta, one footnote in the Supreme Court's decision in *Wall* indicates that the Court is unlikely to find that motions for post-conviction discovery constitute a form of collateral review. *Wall*, 562 U.S. at 556 n.4.  In footnote four, the *Wall* court noted that "[a] motion to reduce sentence is unlike a motion for post-conviction discovery or a motion for appointment of counsel, which generally are not direct requests for judicial review of a judgment and do not provide a state court with authority to order relief from a judgment." *Id.*

The majority of circuits to examine this issue have determined that post-conviction motions for discovery or DNA testing are not forms of collateral or post-conviction review. *See Woodward v. Cline*, 693 F.3d 1289, 1293 (10th Cir. 2012) (determining that a motion under

Kansas statute permitting biological testing is not an application for collateral review that tolls AEDPA's statute of limitations); *Brown v. Sec'y for Dep't of Corr.*, 530 F.3d 1335, 1338 (11th Cir. 2008) (determining that Florida rule permitting post-conviction DNA testing did not toll AEDPA's limitations period because it did not provide a review mechanism); *Price v. Pierce*, 617 F.3d 947, 952–53 (7th Cir. 2010) (determining that Illinois statute permitting post-conviction forensic testing was not a collateral review mechanism and did not toll AEDPA's limitations period); *Ramirez v. Yates*, 571 F.3d 993, 999–1000 (9th Cir. 2009) (determining that post-conviction discovery motions did not toll AEDPA limitations period because they did not challenge his conviction); *Hodge v. Greiner*, 269 F.3d 104, 107 (2d Cir. 2001) (determining that post-conviction motion for discovery under New York law did not challenge conviction and therefore did not toll AEDPA's limitations period).

Only the Fifth Circuit has determined that a motion for post-conviction DNA testing qualifies as a collateral review motion. *See Hutson v. Quarterman*, 508 F.3d 236, 237 (5th Cir. 2007); *see also Ramos v. Lumpkin*, No. 21-50775, 2023 WL 2967898, at *1 (5th Cir. Apr. 17, 2023) (determining that district court plainly erred by not tolling AEDPA's limitations period during the pendency of petitioners' motion for DNA testing under Texas law). Importantly, the statute at issue in the Fifth Circuit case, Texas Code of Criminal Procedure Article 64, is the most analogous to MCL § 770.16. Unlike the statutes at issue in the other circuits' decisions,[5] Texas' statute provides a mechanism for review of the underlying judgment by setting forth the procedures that a court *must follow* after receiving the results of postconviction DNA testing. Tex. Code Crim. Proc. Ann. Art. 64.04 (West) ("After examining the results of testing . . . the convicting court shall hold a hearing and make a finding as to whether, had the results been available during the trial of the offense, it is reasonably probable that the person would not have been convicted."). Similarly, upon receipt of DNA testing results showing that the defendant is not the source of the identified biological material, section (8) of MCL § 770.16 requires a reviewing court to hold a hearing and decide whether the defendant is entitled to a new trial.

---

[5]Most of the statutes at issue in the cases decided by other circuits provide only a mechanism for a defendant to request DNA testing and do not otherwise provide for review of the judgment. Instead, a defendant must subsequently file a separate petition for review of the judgment based on the results of the DNA testing.

Respondent argues that although one part of MCL § 770.16 does permit collateral review of the underlying judgment, the statute is sequential in nature, and a defendant must first meet several different requirements before the court can review the judgment. It is true that Michigan courts view the statute as sequential in nature. *See e.g., People v. Poole*, 874 N.W.2d 407, 414 (Mich. Ct. App. 2015) (noting that "MCL [§] 770.16 envisions two main phases; the first phase involves the court assessing whether DNA testing should be ordered, and the second phase entails, if DNA testing was ordered, whether a motion for new trial should be granted" and that a court may not conflate its analysis of the two phases in its opinion). Respondent's argument is unpersuasive, however, because the question of whether a motion for collateral relief tolls the statute of limitations is not dependent on the success of that motion, either in whole or in part, in the state court. This Court has repeatedly found that even unsuccessful motions for collateral review toll the limitations period. *See Board*, 805 F.3d at 773 (noting that "although an unsuccessful motion for leave to file a delayed appeal cannot restart the AEDPA limitations period, it may toll the limitations period while it is pending") (*citing Searcy v. Carter*, 246 F.3d 515, 519 (6th Cir. 2001)). Petitioner's failure to obtain relief does not address whether the statute itself calls for collateral review of the judgment. Moreover, Respondent cites no cases that require a defendant to file a separate action to initiate review under subsection (8) of the statute. In fact, the plain language of MCL § 770.16 suggests that a defendant need not file a separate petition for a new trial in order to obtain review of his judgment. MCL § 770.16(7) states that after DNA testing has been ordered, if the results are inconclusive, the reviewing court "shall deny the motion for new trial." Likewise, MCL § 770.16(8) states that if "the DNA testing show[s] that the defendant is not the source of the identified biological material, the court shall . . . hold a hearing" to determine whether to grant a new trial. This suggests that the petition for DNA testing is also considered a motion for a new trial since no other section of the statute requires a separate petition or action to be filed for the court to consider whether to grant a new trial.

As the Supreme Court noted in *Wall*, "'collateral review' of a judgment or claim means a judicial reexamination of a judgment or claim in a proceeding outside of the direct review process." 562 U.S. at 553. In this case, the statute requires reexamination of the underlying

judgment because it requires the reviewing court, upon receipt of test results indicating that the defendant is not the source of the DNA, to hold a hearing to determine the following:

> (a) That only the perpetrator of the crime or crimes for which the defendant was convicted could be the source of the identified biological material.
>
> (b) That the identified biological material was collected, handled, and preserved by procedures that allow the court to find that the identified biological material is not contaminated or is not so degraded that the DNA profile of the tested sample of the identified biological material cannot be determined to be identical to the DNA profile of the sample initially collected during the investigation described in subsection (1).
>
> (c) That the defendant's purported exclusion as the source of the identified biological material, balanced against the other evidence in the case, is sufficient to justify the grant of a new trial.

MCL § 770.16(8).  Accordingly, a properly filed motion under § 770.16 would constitute a motion for collateral or other post-conviction review.

Respondent also argues that a petition under MCL § 770.16 is not one for collateral review because Michigan law permits a defendant to challenge his conviction only through a motion for relief from judgment pursuant to MCR 6.500.  Respondent cites an unpublished decision from this Court for the proposition that the only post-conviction proceedings which may toll the statute of limitations are those "recognized as such under governing state procedures." *Williams v. Brigano*, 238 F.3d 426 at *2 (6th Cir. 2000) (unpublished table decision).  This proposition may be true, but it does not apply in this instance.  In *Williams*, this Circuit rejected the defendant's attempts to toll the limitations period by filing a motion to reopen his post-conviction proceedings (even though there was no state statute or rule permitting this type of motion) and by filing a motion for a declaratory judgment action (which are typically used only in civil cases).  *Id*. *1.  Unlike the applicable law in that case, MCL § 770.16(1) permits a court to order a new trial if the petition is meritorious.

Furthermore, several short orders by the Michigan Supreme Court suggest that § 770.16 is an alternative means of obtaining a new trial, and thus neither:  (1) impacts a defendant's ability to obtain post-conviction relief under MCR 6.500 *et. seq*.; nor (2) is subject to the statutory requirements for successive petitions.  *See, e.g., People v. Faulkner*, 840 N.W.2d 365

(Mich. 2013) (holding that the court of appeals erred in denying defendant's motion for relief from judgment brought pursuant to MCR 6.500 as a successive petition because defendant's prior petition for DNA testing under MCL § 770.16 "did not preclude him from filing a motion for relief from judgment under MCR Subchapter 6.500"); *People v. Alexander*, 896 N.W.2d 432 (Mich. 2017) (determining that defendant's subsequently filed post-conviction motion for relief from judgment was not a successive motion and barred by MCR 6.502(G) because defendant previously had filed only a motion for new trial and DNA testing pursuant to MCL § 770.16).

Accordingly, Kares' petition for DNA testing and a new trial pursuant to MCL § 770.16 tolls AEDPA's limitations period because it was properly filed and calls for "postconviction or other collateral review" pursuant to § 2244(d)(2).

**B. Certificate of Appealability**

After determining that Kares' § 2254 petition was untimely, the district court also addressed each of Kares' objections and determined that the claims asserted within the habeas petition lacked merit or were procedurally defaulted. The district court granted Kares a COA solely on the issue of whether his habeas petition was timely filed. Kares now moves this court to expand the COA to allow him to appeal the district court's decision on the merits of his habeas petition. Kares seeks leave to appeal only one of his merits claims, arguing that the state trial court committed an *Alleyne* violation and that this claim was not procedurally defaulted because his failure to bring that claim on direct appeal in the state court was due to his appellate counsel's ineffective assistance.

A state prisoner whose § 2254 petition is denied by the district court does not have an absolute right to appeal and must instead obtain a COA from a circuit justice or judge. *Buck v. Davis*, 580 U.S. 100, 115 (2017) (citing 28 U.S.C. § 2253(c)(1)). A COA may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." *Id.* (quoting 28 U.S.C. § 2253(c)(2). This Court reviews *de novo* a district court's determination that a claim is procedurally defaulted. *Hicks v. Straub*, 377 F.3d 538, 551 (6th Cir. 2004). This Court also reviews *de novo* a district court's application of the "cause and prejudice" test excusing procedural default. *Hargrave-Thomas v. Yukins*, 374 F.3d 383, 387 (6th Cir. 2004).

Kares urges this Court to expand the COA to include his claim that the state trial court violated his Sixth and Fourteenth Amendment rights by sentencing him based on facts it found by a preponderance of the evidence, in violation of *Alleyne v. United States*.  Kares does not dispute that he failed to raise this claim on direct appeal in the state courts.  Instead, he relies on this Court's decision in *Chase v. MaCauley*, 971 F.3d 582 (6th Cir. 2020), and argues that the procedural default of his *Alleyne* claim should be forgiven because his failure to raise the claim on direct appeal was due to his appellate counsel's ineffective assistance.

In *Chase*, this Circuit determined that the petitioner could demonstrate cause and prejudice to overcome the procedural default of his *Alleyne* claim because his appellate counsel was ineffective in failing to raise that claim on direct appeal.  971 F.3d at 596.  The *Chase* decision, however, is not directly applicable to Kares' claim.  This is because in *Chase*, the petitioner not only raised the *Alleyne* claim in his state motion for post-conviction relief, but he also raised his claim of ineffective assistance of appellate counsel for failing to raise the *Alleyne* claim in that very same post-conviction review motion.  971 F.3d at 590 (noting that "[t]wo months after the Michigan Supreme Court's decision in *Lockridge*, Chase filed a pro se motion for relief from judgment in the state trial court pursuant to Michigan Court Rule 6.500 *et seq.*  Chase asserted, in relevant part, that the sentencing court's judicial fact-finding in his case had violated *Alleyne* and his appellate counsel had been constitutionally ineffective in failing to raise this claim on direct appeal.").

As this Court noted in *Chase*, a habeas petitioner is required to "raise an ineffective-assistance-of-counsel claim to the state court." *Id.* at 592 (citing *Edwards v. Carpenter*, 529 U.S. 446, 452 (2000)).  Kares does not dispute that he failed to raise an ineffective assistance of appellate counsel claim premised on the failure to raise the *Alleyne* violation in his Rule 6.500 motion.[6]  Moreover, he provides no reasons why his procedural default of that ineffective

---

[6]Kares raised an ineffective assistance of counsel claim in his Rule 6.500 motion, but it was not based on the failure to raise the *Alleyne* claim on direct appeal.  Instead, Kares argued that his appellate counsel was ineffective because appellate counsel failed to raise the issue of trial counsel's ineffectiveness.  Kares' failure to specifically argue that his appellate counsel was deficient in not bringing the *Alleyne* claim is fatal because this Court has previously held that fair presentation requires "'the same claim under the same theory be presented' for the state court's consideration" *Caver v. Straub*, 349 F.3d 340, 346–47 (6th Cir. 2003) (determining that "to the extent that an ineffective assistance of counsel claim is based upon a different allegedly ineffective action than the claim presented to the state courts, the claim has not been fairly presented to the state courts.").

assistance of counsel claim should be excused. *See Edwards*, 529 U.S. at 453–54 (noting that "an ineffective-assistance-of-counsel claim asserted as cause for the procedural default of another claim can itself be procedurally defaulted" but "that procedural default may. . . *itself* be excused if the prisoner can satisfy the cause-and-prejudice standard with respect to *that* claim.").

To overcome a procedural default, a petitioner must establish cause and prejudice. An ineffective assistance of counsel claim can establish cause and prejudice, but it too must be raised in the state court first. Because Kares' state post-conviction motion failed to assert an ineffective assistance of appellate counsel claim based on his defaulted *Alleyne* claim, Kares procedurally defaulted his "cause" and "prejudice" excuse, and this Court cannot review the substance of his claim that an *Alleyne* violation occurred during his sentencing proceeding. Accordingly, we **DENY** Kares' motion to expand the COA and **AFFIRM** the district court's denial of his *Alleyne* claim as procedurally defaulted.[7]

## III. CONCLUSION

For the reasons stated above, we **REVERSE** the district court's order denying Kares' § 2254 petition as untimely, **DENY** Kares' motion to expand the COA, and **AFFIRM** the district court's denial of his petition on the *Alleyne* claim as procedurally defaulted.

---

[7]Kares argues that the failure to grant his motion for a COA will render this Court's opinion with respect to the timeliness of his habeas petition advisory. This is not so. Article III of the Constitution empowers courts to hear cases or controversies and forbids courts from rendering advisory opinions "advising what the law would be upon a hypothetical state of facts." *United States v. Asakevich*, 810 F.3d 418, 420 (6th Cir. 2016) (citing *Chafin v. Chafin*, 568 U.S. 165, 172 (2013)). This court's decision is not "advisory" merely because it does not grant the relief requested by the petitioner. The question of whether Kares' habeas petition was timely filed presents a case or controversy that this Court must resolve, even though this Court ultimately also decides to affirm the district court's decision on the merits of that petition. Had Kares offered an excuse for his default of his ineffective assistance of appellate counsel claim premised on the *Alleyne* violation, this Court could have excused his procedural default of that claim. Thus, Kares' claim is redressable and presents a live dispute this court must resolve.